UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**KEMAL MRNDZIC** | Docket No. 23-CR-10158 |

## MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL

The defendant, Kemal Mrndzic, respectfully renews his motion, pursuant to Federal Rule of Criminal Procedure 29, as well as the Fifth and Sixth Amendments to the Constitution, to enter a judgment of acquittal on Counts I, II, III, VI, and VII.[1] The government failed to prove each and every element of the offenses contained in these counts. The evidence, taken in the light most favorable to the verdict, was insufficient to sustain Mr. Mrndzic's conviction on any of the charges beyond a reasonable doubt. In the alternative, Mr. Mrndzic respectfully moves this Court, pursuant to Federal Rule of Criminal Procedure 33, for a new trial in this matter because the interest of justice so requires. Certain specific legal errors and deficiencies of proof, without limitation, are highlighted in the memorandum below.

## LEGAL STANDARD

**I.     Rule 29**

Under Rule 29, "[a] judgment of acquittal should only be granted when the evidence and all reasonable inferences to be drawn from the evidence, both taken in the light most favorable to the government, are insufficient for a rational factfinder to conclude that the prosecution has

---

[1] Mr. Mrndzic previously renewed his motion for a judgment of acquittal under Rule 29 and moved for a new trial under Rule 33 on October 30, 2024. *See* Renewed Motion for Judgment of Acquittal or, Alternatively, Motion for a New Trial, Dkt. No. 147. He now submits this memorandum in support.

1

proven, beyond a reasonable doubt, each of the elements of the offense." *United States v. Pimental*, 380 F.3d 575, 584 (1st Cir. 2004); *see also United States v. Lachman*, 521 F.3d 12, 16 (1st Cir. 2008).

Although a district court must look at the evidence in the light most favorable to the government, the Rule 29 standard is not a "free pass" for the prosecution. *United States v. Martin*, 228 F.3d 1, 10 (1st Cir. 2000). The Court must apply "some degree of intellectual rigor" and reject "evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." *United States v. Pothier*, 919 F.3d 143, 146 (1st Cir. 2019) (quoting *United States v. Spinney*, 65 F.3d 231, 234 (1st Cir. 1995)); *United States v. Ofray-Campos*, 534 F.3d 1, 31-32 (1st Cir. 2008). "[I]f the evidence, when viewed in the light most favorable to the government, gives equal or nearly equal circumstantial support to theories of guilt and innocence," acquittal is required. *Martin*, 228 F.3d at 10. "This is so because . . . where an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence . . . , 'a reasonable jury *must necessarily entertain* a reasonable doubt.'" *United States v. Andujar*, 49 F.3d 16, 20 (1st Cir. 1995); *accord United States v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005) ("[A]t the end of the day, if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.").

II.     **Rule 33**

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The rules do not define 'interests of justice,'" *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (internal quotation marks omitted), and whether to grant a motion for a new trial "is

ordinarily a 'judgment call,'" *United States v. Connolly*, 504 F.3d 206, 211 (1st Cir. 2007) (citation omitted), that "rests within the discretion of the trial judge," *United States v. Rodriguez*, 738 F.2d 13, 17 (1st Cir. 1984). The interests-of-justice standard encompasses more than what would constitute reversible error on appeal, *see United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994), and courts have granted new trials "in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial," *United States v. Cabrera*, 734 F. Supp. 2d 66, 87-88 (D.D.C. 2010) (internal quotation marks omitted), *aff'd in part sub nom. United States v. Vega*, 826 F.3d 514 (D.C. Cir. 2016) (per curiam). Unlike with an insufficiency of the evidence claim, when the trial court evaluates a Rule 33 motion, it need not view the evidence favorably to the conviction but instead exercises its own judgment in assessing the government's case. *See United States v. Merlino*, 592 F.3d 22, 33 (1st Cir. 2010) ("a district court has greater latitude in considering a motion for a new trial than it does in considering a motion for acquittal"). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (citation omitted).

## ARGUMENT

The government failed to present evidence sufficient to support a conviction on Counts I, II, III, VI, and VII. The jury's verdict on those counts must be set aside and a judgment of acquittal entered. Additionally, the Court should grant a new trial in this matter because the interest of justice so requires. Below, Mr. Mrndzic highlights certain legal errors and deficiencies of proof, but maintains that the evidence was insufficient to sustain a conviction on any of the offenses of conviction.

**I.  The Jury was Incorrectly Instructed on Counts I-III, Requiring a New Trial under Rule 33.**

At trial, Mr. Mrndzic requested that the jury be instructed on the meaning of "secured" (in Count I) and "procured" (in Counts II and III) in accordance with *Maslenjak v. United States*, 582 U.S. 335 (2017). Mr. Mrndzic also requested that the jury be instructed that materiality was a required element of Count I, and that in Counts I-III, the government must prove that a false statement was made in the application for the document in question as to each Count. The Court declined to give the defense's proposed instructions. As a result, the government relied on incomplete and incorrect legal instructions for Counts I-III in its argument to the jury and the jury relied on those instructions. The risk that the jury based its verdict on an improper understanding of the law substantially prejudiced Mr. Mrndzic and a new trial is required under Rule 33 as a result.

In *Maslenjak*, the Supreme Court analyzed 18 U.S.C. § 1425(a), which criminalizes "procur[ing], contrary to law, the naturalization of any person." *Id.* at 338. The defendant in that case was an ethnic Serb who resided in Bosnia with her family during the Bosnian War. *Id.* at 338-39. In 1998, she, along with her husband and two children, met with an American immigration official to seek refugee status in the United States. *Id.* In her application, the defendant made up a story about her husband's background regarding his participation in the war. *Id.* When the defendant applied for naturalization in 2006, she swore that she had not previously given false or misleading information to a government official while applying for an immigration benefit or lied to gain entry or admission into the United States. *Id.* at 339. In truth, the defendant had known that the story she had given when she sought refugee status was false. *Id.* Specifically, she had hidden the fact that her husband had not only served in the Bosnian Serb Army (the VRS), but that he had served in a brigade that participated in the Srebrenica massacre. *Id.* As a result, the defendant was

charged with knowingly "procur[ing], contrary to law, [her] naturalization," in violation of 18 U.S.C. § 1425(a). *Id*. at 340.

The central issue in *Maslenjak* was § 1425(a)'s materiality requirement. The government argued that a conviction under 18 U.S.C. § 1425(a) was proper so long as the Government "proved that one of the defendant's statements was false – even if the statement was not material and did not influence the decision to approve her naturalization." *Id*. The Supreme Court disagreed. It found that an illegal act (in the defendant's case, a false statement) "must have somehow contributed to the obtaining of citizenship." *Id*. at 342. The Court set out a clear test for materiality:

> We hold that the Government must establish that an illegal act by the defendant played some role in her acquisition of citizenship. When the illegal act is a false statement, that means demonstrating that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result.

*Id*.

The Court also specifically addressed situations where "true facts lying behind a false statement would not in and of themselves justify denial of citizenship," but nevertheless could have "led to the discovery of other facts which would do so." *Id*. at 349. The Court unequivocally stated that when the government relies on such an "investigation-based theory," it must make the following two-part showing to meet its burden:

> As an initial matter, the Government has to prove that the misrepresented fact was sufficiently relevant to one or another naturalization criterion that it would have prompted reasonable officials, seeking only evidence concerning citizenship qualifications, to undertake further investigation. If that much is true, the inquiry turns to the prospect that such an investigation would have borne disqualifying fruit. As to that second link in the causal chain, the Government need not show definitively that its investigation would have unearthed a disqualifying fact (though, of course, it may). Rather, the Government need only establish that the investigation would predictably have disclosed some legal disqualification.

*Id*. at 349-50 (internal citations omitted).

In this case, the same "procurement" language that the Supreme Court interpreted in *Maslenjak* in the context of 18 U.S.C. § 1425(a) also appears in Count II and III. For Count II, the government had to prove that Mr. Mrndzic used a naturalization certificate knowing it was **procured by** fraud or false evidence. *See* Superseding Indictment, 18-19; 18 U.S.C. § 1015(c). For Count III, the government had to prove that Mr. Mrndzic possessed a document knowing that it was **procured by** means of any false claim or statement. *See* Superseding Indictment, 20-22; 18 U.S.C. § 1546(a). Mr. Mrndzic therefore requested that the Court instruct the jury on the meaning of "procured by" as defined by the Supreme Court in *Maslenjak*. *See* Defense Proposed Instruction no. 24, 26, Dkt. No. 105; Defense Revised Instruction no. 24, 26, Dkt. No. 129.

Similarly, in Count I, the government was required to prove that Mr. Mrndzic used a United States passport that was **secured** in any way **by reason of** any false statement. *See* Superseding Indictment, 15-17; 18 U.S.C. § 1542. Section 1542 uses slightly different language from the other statutes, but the language of 18 US.C. § 1542 indicates there must still be some causal link between the false statement and the securing of the passport. Although courts have held that materiality is not required to prove a violation of the first paragraph of 18 U.S.C. § 1542 (which prohibits the *making* of any false statement in a passport application), *see, e.g., United States v. Meredith,* 685 F.3d 814, 824 (9th Cir. 2012); *United States v. Salinas*, 373 F.3d 161, 167 (1st Cir. 2004) (dictum), it is an open question whether materiality is required in a prosecution under the second paragraph of 18 U.S.C. § 1542, which was charged here. The use of "by reason of" in 18 U.S.C. § 1542, like the use of "procured by" in 18 U.S.C. § 1425(a), implies that there is such a materiality requirement in the second paragraph. Following the Supreme Court's interpretation of language similar to that in 18 U.S.C. § 1542, the government was required to show on Count I that a false statement in the passport application would have mattered to a government official because it would have justified

denying the passport application or would predictably have led to other facts warranting that result. *See Maslenjak*, 582 U.S. at 338. Mr. Mrndzic requested that the Court instruct the jury accordingly.

In addition to the *Maslenjak* instruction, Mr. Mrndzic also requested the Court instruct the jury that in Counts I-III, the government was required to show that the false statement at issue was made in the application for the document (i.e., passport, naturalization certificate, or social security card) involved in each Count. *See* Defense Proposed Instruction no. 22, 24, 26; Defense Revised Instruction no. 24, 26; Motion to Dismiss, 11-17.

The Court did not give the instructions as requested by the defense. The Court did not give any materiality instruction on Count I. On Counts II and III, the Court instructed the jury that the alleged false statements must have "somehow contributed" to the issuance of the certificate of naturalization or Social Security Card. Jury Charge at 22, 25. However, the Court did not include the specific language required by *Maslenjak* when the government pursues an "investigation-based theory" on false statements made in immigration-related applications. *See* Defense Proposed Instruction no. 22, 24, 26; Defense Revised Instruction no. 24, 26. The government did present such a theory in this case, and the full *Maslenjak* definition of materiality was the correct statement of law.

Failing to correctly instruct the jury on the meaning of the statute was clear error. This error created an unacceptable risk that the jury convicted Mr. Mrndzic based on an improper understanding of the law. This is doubly true on Count I, where the jury did not receive *any* instruction on materiality. A new trial should therefore be ordered on those counts. *See Ferguson*, 246 F.3d at 134 ("The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice."); *United States v. Vavic*, No. 19-cr-10081-IT, 2022 WL 4276377,

at *26-27 (D. Mass. Sept. 15, 2022) (granting a new trial in a Varsity Blues case, where the government invited the jury to convict the defendant based on an improper legal argument).

## II. The Government Failed to Prove that Mr. Mrndzic Made Material False Statements in Count VI and Judgment of Acquittal is Required under Rule 29.

In Count VI, the government alleged that on May 16, 2023, Mr. Mrndzic knowingly and willfully made the following materially false, fictitious and fraudulent statement in violation of 18 U.S.C. § 1001(a)(2):

> Q: From June until December 1992, is your answer to me that you did not know, that you were not aware, that other guards were beating prisoners?
>
> A: Specifics. Specifics, U/1. Whatever. Overheard. That when I go out. None of the guards ever took me. None I was in position to see it. And none I participated. With any kind of hurting another human being.

Superseding Indictment, 25.

For the jury to convict Mr. Mrndzic of making a false statement on Count VI, the government was required to prove beyond a reasonable doubt (1) that Mr. Mrndzic knowingly and willfully made a material false statement, (2) that Mr. Mrndzic made the statement voluntarily and intentionally, and (3) that Mr. Mrndzic made the statement in a matter within the jurisdiction of a federal government agency. 18 U.S.C. § 1001; First Circuit Pattern Jury Instructions 4.18.1001; Defense Proposed Jury Instruction No. 27-34, Dkt. No. 105; Defense Proposed Jury Instruction No. 30, Dkt. No. 129.[2] Here, the government's evidence as to the first element was so lacking that Rule 29 requires the Court to set aside the jury's guilty verdict. For example, judgment of acquittal should be entered on Count VI because the government has not shown that the statement Mr. Mrndzic made was material.

---

[2] Mr. Mrndzic's proposed jury instructions nos. 27-34 (and revised instruction no. 30) provide a more accurate breakdown of each element of 18 U.S.C. § 1001 than the instructions the Court gave. He maintains his objection to not including these proposed instructions.

8

A false statement is only material if it has "a natural tendency to influence or to be capable of influencing the decision of the decisionmaker to which it was addressed." First Cir. Pattern Jury Instructions 4.18.1001; Jury Charge at 26.[3] A statement, however, is not material if it *could* have influenced the decisionmaker. The government must prove, beyond a reasonable doubt, that the statement *would* have influenced the decisionmaker. *See Munyenyezi v. United States*, 989 F.3d 161, 167 (1st Cir. 2021) (interpreting *Maslenjak v. United States*, 582 U.S. 335 (2017)) ("Reduced to its nub, *Maslenjak* requires proof that the truth *would* have predictably led a reasonable official to deny the application, while the instruction here required that the government prove that the truth *could* have had such an effect.") (emphasis in original). *Cf. Maslenjak*, 582 U.S. at 338 (in the context of 18 U.S.C. § 1425(a), "[w]hen the illegal act is a false statement that means demonstrating that the defendant lied about facts that would have mattered to an immigration official, because they would have justified denying naturalization or would predictably have led to other facts warranting that result.").

Here, the "decisionmaker" to which the statement was addressed was Agent Langille. When Mr. Mrndzic made the alleged statement to Agent Langille in May 2023, Agent Langille had already spoken to Mr. Mrndzic twice – once on March 22, 2022 and again on March 28, 2022. In all three of these interviews, Mr. Mrndzic admitted that he had been a guard at Čelebići. Agent Langille testified that despite already having evidence that he believed showed Mr. Mrndzic was aware of the events at Čelebići, and despite Mr. Mrndzic previously disagreeing with Agent Langille's perceived version of Mr. Mrndzic's role at Čelebići in their prior conversations, Mr. Mrndzic's May 2023 statement was material because it resulted in Agent Langille doing more work in the investigation. However, by the time Agent Langille spoke to Mr. Mrndzic in May

---

[3] The Court did not include in its final jury instructions Mr. Mrndzic's proposed instructions on materiality as to Count VI. Mr. Mrndzic maintains his objection to not including his proposed instruction.

2023, he had already authored a civil de-naturalization petition for Mr. Mrndzic based on his immigration statements which did not involve Čelebići, and thereafter built an entire criminal case against Mr. Mrndzic. The indictment against Mr. Mrndzic was filed less than 30 days later on June 14, 2023. The timing of the indictment directly undermines Agent Langille's claims on materiality.

Even when viewed in the light most favorable to the government, the testimony gives equal or nearly equal circumstantial support to theories of guilt and innocence. As a result, no reasonable jury could have found that the statement made by Mr. Mrndzic on May 16, 2023 was material. Mr. Mrndzic's statement did not change what Agent Langille already knew about Mr. Mrndzic's past. It did not influence or change the outlook of the investigation, nor the view of the facts as the government understood them. The evidence presented by the government was insufficient to support a guilty verdict on Count VI. The verdict must be set aside in favor of an acquittal.

### III.     Count VII was Constructively Amended and Prejudicially Varied from the Superseding Indictment, Requiring a New Trial under Rule 33.

The government's argument and the Court's instructions constructively amended the Superseding Indictment, and prejudicially varied from it as to Count VII. As a result, this Court cannot be certain that Mr. Mrndzic was convicted of the charge set out in the Superseding Indictment, and a new trial is warranted.

A constructive amendment occurs when "the charging terms of an indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them." *United States v. McBride*, 962 F.3d 25, 32 (1st Cir. 2020). "The rule against constructive amendments exists to preserve the defendant's Fifth Amendment right to indictment by grand jury, to prevent re-prosecution for the same offense in violation of the Sixth Amendment, and to protect the defendant's Sixth Amendment right to be informed of the charges against him." *Id*. "Under the Fifth Amendment, 'a court cannot permit a defendant to be tried on charges that are not made in

the indictment against him.' *United States v. Madden*, 733 F.3d 1314, 1317-18 (11th Cir. 2013). '[A] defendant can be convicted only of a crime charged in the indictment' and '[t]he district court may not constructively amend the indictment.' *Id*. at 1318.

The district court 'constructively amend[s]' the indictment when it alters the essential elements of the charged offense in the indictment to broaden the possible bases for a conviction beyond those contained in the indictment. *Id.; see also United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (the defendant "must demonstrate that the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment"). No showing of prejudice is necessary to find an impermissible constructive amendment occurred. *See United States v. Mueffelman*, 470 F.3d 33, 38 (1st Cir. 2006); *United States v. Wozniak*, 126 F.3d 105, 109 (2d Cir. 1997) (a constructive amendment is a "per se violation of the Grand Jury Clause of the Fifth Amendment that requires reversal even without a showing of prejudice to the defendant").

A variance, on the other hand, occurs "when the charging terms remain unchanged but when the facts proved at trial are different from those alleged in the indictment." *Mueffelman*, 470 F.3d at 38. Unlike a constructive amendment, variance is permissible unless prejudice is shown by the defendant. *Id.* Ultimately, "the concepts of constructive amendment and variance are closer to a continuum than exclusive categories*." Id.*

Here, the government's presentation of evidence and the Court's instructions constructively amended and prejudicially varied the Superseding Indictment as to Count VII. On Count VII, the government was required to prove that Mr. Mrndzic knowingly and willfully falsified, concealed, and covered up one or more material facts in a matter within the jurisdiction

11

of the executive branch of the government of the United States. However, it was not sufficient for the government to prove that Mr. Mrndzic falsified, concealed, and covered up *any fact* in the alleged time period. The Superseding Indictment specifically alleges that a certain fact was concealed, covered up, and falsified *at specific times*:

> Beginning in or about March 1998, and continuing through on or about May 16, 2023, in the Republic of Croatia, the District of Massachusetts, and elsewhere, the defendant, Kemal Mrndzic a/k/a "Kemo" did knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device one or more material facts in a matter within the jurisdiction of the executive branch of the Government of the United States, in that the defendant, as an applicant for refuge and admission into the United States, as an applicant for United States citizenship, and in response to questions posed to him by Special Agents from the Department of Homeland Security, concealed the fact that he participated in the direct and indirect persecution of one or more persons because of race, religion, national origin, membership in a particular social group, and political opinion while he was a guard and a supervisor of the Čelebići prison camp in 1992.

Superseding Indictment, 26.[4]

The defense requested a jury instruction that mirrored the language in the Superseding Indictment. It requested the Court instruct the jury as follows:

> First, that as an applicant for refuge and admission into the United States, as an applicant for United States citizenship, and in response to questions posed to him by Special Agents from the Department of Homeland Security, Mr. Mrndzic falsified, concealed, or covered up the fact that he participated in the direct and indirect persecution of one or more persons because of race, religion, national origin, membership in a particular social group, and political opinion while he was a guard and a supervisor of the Čelebići prison camp in 1992;
>
> Second, that the fact was material;
>
> Third, that Mr. Mrndzic falsified, concealed, or covered up the fact by trick, scheme, and device;
>
> Fourth, that Mr. Mrndzic acted knowingly and willfully; and
>
> Fifth, that the fact pertained to a matter within the jurisdiction of the executive branch of the government of the United States.

---

[4] Although the jury did return a guilty verdict on this count, it found via a special question that Mr. Mrndzic only concealed his participation in **indirect** persecution.

Defense Proposed Instruction no. 35, 36, Dkt. No. 105; Defense Proposed Jury Instruction no. 37, Dkt. No. 132.

The Court declined to give the defense's instruction. Instead, at trial, the Court instructed the jury that the government had to prove the following elements beyond a reasonable doubt:

1. The defendant concealed or covered up by trick, scheme, or device a material fact;

2. The defendant did so knowingly and willfully;

3. The subject matter involved was within the jurisdiction of any department or agency of the United States; and

4. The defendant engaged in at least one affirmative act of concealment at some point after July 8, 2019.

Jury Charge at 29. The Court went on to state that the "alleged, material fact" that the government had to prove the defendant concealed or covered up was:

> [T]hat he participated in the direct or indirect persecution of one or more persons because of race, religion, national origin, membership in a particular social group, or political opinion while he was a guard and supervisor at the Čelebići camp in 1992.

Jury Charge at 29.[5]

Here, the Superseding Indictment specifies three separate events in which Mr. Mrndzic falsified, concealed, or covered up the material fact in question: first, as an applicant for refuge and admission into the United States, second, as an applicant for United States citizenship, and third, in response to questions posed to him by Special Agents from the Department of Homeland Security. Those events took place in 1998 (application for refuge and admission into the United

---

[5] The Court also separately instructed the jury on the definition of "direct" and "indirect" persecution. Mr. Mrndzic objected to that instruction. Because the Court overruled the defense's objection, the defense proposed an alternative instruction. *See* Defense Proposed Jury Instruction no. 37, Dkt. No. 132. Mr. Mrndzic maintained, and still maintains, his original objection and his objection to the instruction given.

13

States), 2008 (application for United States citizenship), and 2022-23 (interviews with Department of Homeland Security Agents). However, at trial, the government's presentation of evidence and the Court's instructions permitted the jury to go beyond those events specifically named in Count VII of the Superseding Indictment. It broadened the possible bases for a conviction on Count VII beyond those contained in the indictment, and as a result there is a "substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment," *D'Amelio*, 683 F.3d at 416.

The government's evidence and argument may also be seen as a prejudicial "variance," since the proof at trial established facts different from those alleged in Count VII of the Superseding Indictment. For example, while Count VII of the Superseding Indictment only includes those three specific events (i.e., the application for refuge and admission into the United States, the application for citizenship, and the interviews with the HSI agents), the government presented evidence and argued that Mr. Mrndzic made false statements at many other times, including in his application for lawful permanent residence, his application for a passport, and even in his conversation with a border officer upon his return to the United States from Greece in 2017. Mr. Mrndzic was prejudiced by this variance because he prepared for trial based on the allegations contained in Count VII of the Superseding Indictment. Whether the error is viewed as a constructive amendment or a prejudicial variance or both, a new trial is required.

## CONCLUSION

In sum, the government failed to present sufficient evidence on every count of conviction. The government and Court also made errors that require a new trial. Judgment of acquittal should be entered on each count of conviction or, in the alternative, a new trial granted.

Respectfully submitted,

*/s/ Brendan Kelley*
Brendan Kelley

*/s/ Forest O'Neill-Greenberg*
Forest O'Neill-Greenberg

*/s/ Caitlin Jones*
Caitlin Jones

Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
brendan_kelley@fd.org
forest_oneill-greenberg@fd.org
caitlin_jones@fd.org

**CERTIFICATE OF SERVICE**

I, Brendan Kelley, hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 17, 2024.

*/s/ Brendan Kelley*
Brendan Kelley